1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  ALVARO QUEZADA,                          CASE NO. 1:09-cv-02040-LJO-SKO PC

10                        Plaintiff,          ORDER DISMISSING COMPLAINT, WITH
                                             LEAVE TO FILE AMENDED COMPLAINT
11       v.                                  WITHIN 30 DAYS

12  A. HEDGPETH, et al.,                     (Doc. 1)

13                        Defendants.
                                        /
14

15        Plaintiff Alvaro Quezada ("Plaintiff") is a state prisoner proceeding pro se and in forma

16  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

17  California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at

18  Kern Valley State Prison ("KVSP") in Delano, California.  Plaintiff is suing under Section 1983 for

19  the violation of his rights under the First and Fourteenth Amendments.  Plaintiff names A. Hedgpeth

20  (warden), K. Harrington (warden), and B. Gricewitch (appeals coordinator) as defendants.  For the

21  reasons set forth below, the Court finds that Plaintiff's complaint fails to state any claims upon which

22  relief can be granted under Section 1983.  The Court will dismiss Plaintiff's complaint, with leave

23  to file an amended complaint within 30 days.

24  **I.     Screening Requirement**

25        The Court is required to screen complaints brought by prisoners seeking relief against a

26  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

27  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

28  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading

standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550

U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id.

(quoting Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual

allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

## II.   **Background**

Plaintiff claims that Defendants violated his rights under the First and Fourteenth

Amendments.  Plaintiff sets forth his claims in two separate "counts."

In "Count I" of Plaintiff's complaint, Plaintiff alleges that Defendant Hedgpeth, Harrington,

and Gricewitch violated Plaintiff's Fourteenth Amendment rights.  On October 26, 2007, Hedgpeth

placed "B-facility" on lockdown.  Plaintiff complains that he was not allowed to report to his work

assignment during the lockdown.  (Compl. 5:, ECF No. 1.[1])  Plaintiff also complains that he was not

allowed to exercise outside and could not attend rehabilitative programs during the lockdown.

---

[1]Citations to Plaintiff's complaint refer to the page numbers as the complaint is electronically docketed.
The page numbers used by Plaintiff differ from the page numbers as docketed in PDF format.

1       Plaintiff complains that the lockdown was improper because any lockdown that exceeds 24

2   hours must be approved by the "Director or Director[sic] Designee'[sic]" and Hedgpeht did not

3   receive proper approval for the lockdown, which lasted almost a month.  (Compl. 5, ECF No. 1.)

4   Plaintiff also complains that Hedgpeth violated a prison regulation that prohibits inmates from being

5   "confined to quarters or otherwise deprived of exercise as a disciplinary disposition longer than 10

6   days."[2]

7       Plaintiff also complains that he was discriminated against because Hedgpeth implemented

8   policies that gave greater privileges to "level one inmates" compared to "level four inmates."

9   Plaintiff complains that Hedgpeth gave "level one inmates" yard, canteen, phone, and work

10  assignment privileges that were denied to Plaintiff and other "level four inmates."[3]   Plaintiff

11  complains he was discriminated against because of his custody level.  Plaintiff alleges that Hedgpeth

12  allowed "level one inmates" to replace the assigned "level four sattelite kitchen workers" at their

13  work assignments.  Plaintiff claims Hedgpeth violated a prison regulation which prohibited prison

14  officials from granting privileges to any inmate or group of inmates "not equally available to other

15  inmates of the same custody classification and assignment who would other wise[sic] be eligible for

16  the same privileges."[4]  (Compl. 7, ECF No. 1.)  Plaintiff also claims that he has a liberty interest in

17  his work assignment and was deprived of that interest without due process.

18      Plaintiff also complains that Hedgpeth allowed "level one inmates" to replace "level four

19  inmates" in certain medical positions.  Plaintiff claims that Hedgpeth's actions endangered the health

20  and safety of other inmates because the "level one inmates" did not have proper training for their

22  [2]It is unclear how this regulation was violated.  Plaintiff did not allege that he was placed on lockdown as a

23  result of "a disciplinary disposition."

24  [3]Although Plaintiff does not specifically allege that the differential treatment was related to the lockdown, the Court assumes that it was because Plaintiff alleges that he was a level four inmate with a work assignment in the

25  kitchen.  Plaintiff was deprived of the work assignment during the lockdown and is presumably complaining that "level one inmates" were allowed to report to their work assignments during the lockdown while "level four inmates"

26  could not.  Plaintiff also alleges that "level one inmates" were given outdoor exercise, a privilege that Plaintiff also had before the lockdown.

27  [4]It is unclear how this regulation was violated.  The regulation prohibits differential treatment of inmates in the

28  <u>same</u> custody classification.  Plaintiff presumably is not the same "custody classification" as "level one inmates" because he is a "level four inmate."

new assignments.  Plaintiff alleges that the lack of training posed a risk of transmission of infectious diseases.

Plaintiff also makes general complaints about overcrowding.  Plaintiff claims that overcrowding leads to inmate unrest and misconduct, and has strained the "electrical and sewer system that have[sic] to operate at 'MAXIMUM CAPACITY'." (Compl. 11, ECF No. 1.)  The only specific incident cited by Plaintiff occurred sometime in September 2009 when inmates in the gymnasium rioted.  However, Plaintiff alleges that "other such violent eruptions have occurred in the other facility Gymnasiums here at KVSP." (Compl. 15, ECF No. 1.)  Plaintiff appears to claim that the overcrowding largely stems from the fact that Hedgpeth allowed "level one inmates" to live in the prison's gymnasium.

Plaintiff claims that Defendant Harrington violated Plaintiff's Fourteenth Amendment rights when she "reactivated" the gymnasium to house lower level inmates.  Plaintiff complains that the gymnasium had previously been "deactivated" after Plaintiff filed an administrative appeal.  Plaintiff contends that he has a protected liberty interest in the deactivated gymnasium because prison officials partially granted Plaintiff's administrative appeal requesting deactivation.

Plaintiff claims that Defendant Gricewich violated Plaintiff's Fourteenth Amendment rights when she "penalized" plaintiff for filing administrative appeals.  Plaintiff alleges that Gricewich "vindictively perjured her second level review findings, where she stated false and misleading information designed to have a chilling effect on plaintiff's group appeal."  Plaintiff's claim against Gricewich is explained in more detail in "Count II" of Plaintiff's complaint.

"Count II" of Plaintiff's complaint claims that Defendant Gricewich violated Plaintiff's First Amendment rights by lying in a second level review of one of Plaintiff's administrative appeals. Plaintiff claims that Gricewich lied by stating that "[i]t is noted Facility-B was not under an official modified program on the date in question as there are no program status reports (PSR) corresponding with October 26, 2007." (Compl. 19, ECF No. 1.)  Plaintiff appealed the response to the third level and "introduced the (PSR) that allegedly never existed for the day in question of Oct. 26, 2007." (Compl. 19, ECF No. 1.)  Plaintiff claims that Gricewich lied because of Plaintiff's history of filing administrative appeals and because Plaintiff filed a Section 1983 action against Gricewich in a

previous lawsuit.  Plaintiff alleges that he suffered injury and emotional distress because of Gricewich's actions, but fails to explain how or why.

### III.   Discussion

#### A.   Fourteenth Amendment Claims

Plaintiff claims that Defendants violated his Fourteenth Amendment rights.  Although Plaintiff's presentation of his claims is not entirely clear, the Court liberally construes Plaintiff's Fourteenth Amendment claims as separate claims arising from both the Due Process Clause and the Equal Protection Clause.

##### 1.   Due Process Claims

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

Plaintiff's allegations do not support any claims under the Due Process Clause.  Plaintiff claims to have been deprived of numerous "liberty interests."  Plaintiff complains he was placed in lockdown for almost a month and was unable to enjoy outdoor exercise and his work assignment and other activities.  The lockdown of less than one month was not a significant enough hardship to warrant due process protection.  See Hayward v. Procunier, 629 F.2d 599, 601-03 (9th Cir. 1980) (finding that an institution-wide, six-month lockdown was not outside the foreseeable consequences

of criminal conviction and thus did not require a due process hearing).  Therefore, the Constitution does not require prison officials to obtain "approval," provide Plaintiff with a hearing, or provide any other procedural protections before imposing a one month lockdown.

Further, "the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.' "  Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)).  Plaintiff fails to allege sufficient facts to support the conclusion that the temporary denial of his access to the prison's rehabilitative programs and other privileges such as access to the canteen and to phones rises to the level of an atypical and significant hardship.  Additionally, the Court finds that Plaintiff's complaints about the denial of outdoor exercise are more properly analyzed under the Eighth Amendment, not the Fourteenth Amendment.  See Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (finding that when a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claim).

Plaintiff also alleges that he was deprived of a protected liberty interest when Defendant Harrington reactivated the gymnasium and allowed "level one inmates" to be housed there.  Plaintiff does not have a protected liberty interest in the gymnasium and his due process rights were not violated when prison officials chose to reactivate it to house other inmates.  There is absolutely no factual support for the conclusion that the housing of "level one inmates" in the gymnasium imposed an atypical and significant hardship on Plaintiff.  Plaintiff only offers vague and unsupported allegations about overcrowding and violence.  However, Plaintiff has not alleged how the overcrowding in the gymnasium poses a threat to his safety.  Further, Plaintiff's fears about overcrowding appear to be largely exaggerated because Plaintiff has only identified one violent incident that occurred in the gymnasium.  Plaintiff also complains that the "level one inmates" in the gymnasium enjoyed more privileges than Plaintiff.  However, as discussed above, Plaintiff does not have any constitutionally recognized liberty interest in any of the privileges identified.  Further, the mere fact that a prison official had partially granted an administrative appeal requesting deactivation of the gymnasium does not create a protected liberty interest in the deactivation of the gymnasium.

1   Plaintiff has no cognizable due process claim associated with the reactivation of the gymnasium.

2       Finally, Plaintiff claims that his due process rights were violated when Defendant Gricewich

3   lied to Plaintiff in the second level response to one of Plaintiff's administrative appeals.  Plaintiff

4   has no protected liberty interest in the inmate appeals system.  Ramirez v. Galaza, 334 F.3d 850, 860

5   (9th Cir. 2003).  By extension, Plaintiff is not deprived of any liberty interest simply because he is

6   displeased with the manner in which an appeals coordinator processes his appeals.  There is

7   absolutely nothing in Plaintiff's complaint that suggests that Plaintiff suffered an atypical and

8   significant hardship simply because Gricewich lied about whether "Facility-B" was on a "modified

9   program."  By all indications, Gricewich's lie was trivial – Plaintiff fails to explain how the

10  statement was substantially prejudicial to him.  The statement appears to be so minor and irrelevant,

11  and it is questionable whether Gricewich was intentionally lying because Gricewich offers no other

12  factual support for his conclusion that Gricewich's statements were deliberately dishonest.  It is not

13  clear why Gricewich would lie about whether "Facility-B" was on a "modified program."  Plaintiff

14  fails to state any cognizable due process claim stemming from Gricewich's processing of Plaintiff's

15  administrative appeal.

16              **2.    Equal Protection Claims**

17      Plaintiff claims that his equal protection rights were violated when "level one inmates" were

18  allowed to enjoy certain privileges while Plaintiff and other "level four inmates" were not allowed

19  to enjoy those privileges.  The Equal Protection Clause requires that persons who are similarly

20  situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439

21  (1985).  A plaintiff may establish an equal protection claim by showing that the plaintiff was

22  intentionally discriminated against on the basis of the plaintiff's membership in a protected class.

23  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal

24  protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's

25  membership in a suspect class, such as race.  Thornton v. City of St. Helens, 425 F.3d 1158, 1167

26  (9th Cir.2005).

27      Plaintiff's equal protection claim does not involve any suspect classifications.  Plaintiff

28  claims he was discriminated against based on his custody level.  If the action in question does not

1   involve a suspect classification, a plaintiff may establish an equal protection claim by showing that

2   similarly situated individuals were intentionally treated differently without a rational relationship to

3   a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio

4   School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375

5   F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th

6   Cir.2002).  To state an equal protection claim under this theory, a plaintiff must allege that: (1)

7   plaintiff is a member of an identifiable class; (2) plaintiff was intentionally treated differently from

8   others similarly situated; and (3) there is no rational basis for the difference in treatment.  Village

9   of Willowbrook, 528 U.S. at 564.

10   Plaintiff fails to state a cognizable equal protection claim.  He fails to establish that he was

11   treated differently from other inmates who were similarly situated.  Plaintiff claims that he was

12   treated differently from inmates of a different classification level.  Plaintiff fails to allege or describe

13   the differences in the classification levels.  In the Court's experience, the classification levels are

14   related to an inmate's history of violence, disobedience, or other disciplinary violations. Presumably,

15   "level one inmates" are less of a threat than "level four inmates" because their classification indicates

16   that they are less dangerous.[5]  It is clear that there is a rational and legitimate purpose behind the

17   differential treatment of inmates belonging to different classification levels.  Imposing greater

18   restrictions on violent or disobedient inmates limits their opportunities to cause violence or break

19   rules and gives them an incentive to obey prison rules.  Inmates from lower classification levels pose

20   less of a threat to institutional security and do not need as many restrictions.  Plaintiff fails to state

21   any cognizable equal protection claims based on the differential treatment between "level one

22   inmates" and "level four inmates."

23   **B.   Eighth Amendment Claims**

24   Although Plaintiff does not mention the Eighth Amendment or explicitly raise any claims

25   under the Eighth Amendment, the Court provides Plaintiff with relevant Eighth Amendment

26

27   [5]Although Plaintiff does not explain the classification system and whether "level one" is more or less restrictive than "level four," the relationship is strongly implied when Plaintiff refers to the "level one inmates" as
28   "lower level inmates" and complains that it was improper to house these inmates "in a level four maximum security institution."  (Compl. 14, ECF No. 1.)

8

standards because Plaintiff appears to allege facts that touch upon issues relevant to Eighth Amendment claims.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Plaintiff claims that he was deprived of outdoor exercise during the lockdown. Although "[Ninth Circuit] case law uniformly stresses the vital importance of exercise for prisoners," Thomas v. Ponder, No. 09-15522, 2010 WL 2794394, at *6 (9th Cir. July 16, 2010), "'a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation'" in the Eighth Amendment context, Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)). Plaintiff has alleged a less than one month deprivation of outdoor exercise due to a temporary lockdown. Plaintiff did not suffer any substantial medical effects as a result of the relatively short deprivation of outdoor exercise. There is no plausible suggestion that there was any risk of substantial injury from the temporary denial of outdoor exercise. Plaintiff's allegations do not support an Eighth Amendment claim for the denial of outdoor exercise.

Plaintiff also claims that Defendant Hedgpeth allowed "level one inmates" to work in medical work assignments when they were not properly trained. Plaintiff claims that the lack of training placed inmates at risk of contracting contagious diseases. Plaintiff fails to support his claim with any factual support and the Court will disregard Plaintiff's conclusory allegations as implausible. Plaintiff fails to provide any meaningful description of the work assignments that the "level one inmates" occupied, and fails to offer any details regarding what training was necessary to work in the medical work assignments. Nor does Plaintiff explain what job responsibilities were involved and how an untrained inmate could pose a threat to other inmates if not properly trained. Significantly, Plaintiff has not identified any outbreak of contagious diseases during the time the "level one inmates" were working in those assignments. In the absence of even hypothetical examples of how an untrained inmate could pose a substantial risk to inmate health and safety, Plaintiff's vague allegations of the health risks are not plausible. Further, Plaintiff has not alleged that any Defendant was aware of these health risks and deliberately ignored them. Plaintiff fails to state any cognizable Eighth Amendment claims related to the "level one inmates" working in medical work assignments.

Finally, Plaintiff claims that Hedgpeth and Harrington allowed "level one inmates" to live in the gymnasium, which caused overcrowding. Plaintiff has failed to plead sufficient facts to support an Eighth Amendment claim based on the overcrowding. "Only when overcrowding is combined with other factors such as violence or inadequate staffing does overcrowding rise to an eighth amendment violation." Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 471 (9th Cir. 1989). Plaintiff vaguely alleges that the overcrowding caused one riot. Plaintiff also vaguely alleges that the overcrowding strained the sewage and electrical system, though he does not allege any concrete instances when he suffered any adverse consequences because of the allegedly strained sewage and electrical system. The Court finds that the allegations are not sufficient to establish that the overcrowding posed a substantial threat to inmate health and safety. One prison riot during the entire time inmates were held in the gymnasium is not sufficient to support the conclusion that there was a substantial risk caused by the overcrowding. Further, nothing in Plaintiff's complaint suggests that Defendants acted with deliberate indifference by being aware of a risk of harm and ignoring it.

Finally, it is unclear whether Plaintiff has standing to challenge the overcrowding in the gymnasium. Plaintiff did not live in the gymnasium and fails to explain how the overcrowding in the gymnasium posed a threat to <u>his</u> health or safety. Plaintiff fails to state any cognizable Eighth Amendment claims.

### C.   First Amendment Claims

Plaintiff claims that Defendant Gricewich violated his First Amendment rights when Gricewich lied in his second level response to one of Plaintiff's administrative grievances. Plaintiff characterizes Gricewich's actions as retaliatory. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003).

As noted previously, there is no indication that Gricewich's statements had any significance or prejudiced Plaintiff in any significant way. Plaintiff's complaints regarding Gricewich's processing of his administrative grievances do not come close to stating a claim for retaliation against Plaintiff's First Amendment rights. First, it is unclear how the alleged lie constitutes an "adverse action" against Plaintiff. The lie was so insubstantial that it is implausible to conclude that it was adverse to Plaintiff in any way. Further, because the alleged lie was so trivial, there is nothing in Plaintiff's complaint that supports the conclusion that Gricewich lied in his second level appeal <u>because of</u> Plaintiff's exercise of his First Amendment rights. Finally, the Court notes that nothing in Plaintiff's complaint supports the conclusion that Plaintiff's exercise of his First Amendment rights was chilled by Gricewich's actions. Although Plaintiff is not required to specifically allege

any chilling effect, the proper standard is whether the defendant's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).  The Court finds that Plaintiff has failed to establish that Gricewich's seemingly innocuous statements in his second level appeal response would chill or silence a person of ordinary firmness from engaging in future First Amendment activities.  The alleged deceit appears to be so insubstantial that the Court cannot conclude that it would have any effect on a person of ordinary firmness.  Plaintiff fails to state any claims under the First Amendment for retaliation.

**IV.   Conclusion and Order**

The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under Section 1983.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the court in this order.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment). Plaintiff is cautioned that he may not add unrelated claims involving different defendants in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff elects to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights.  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

However, although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1.     Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

2.     The Clerk's Office shall send Plaintiff a complaint form;

3.     Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

4.     Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so will result in an order striking the amended complaint; and

5.     If Plaintiff fails to file an amended complaint, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **August 30, 2010**                         **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE